# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**DAVID L. BYERS**
Holwager, Byers and Caughey
Beech Grove, Indiana

ATTORNEYS FOR APPELLEE:

**ROBERT G. ZEIGLER**
**KAREN L. WITHERS**
Zeigler Cohen & Koch
Indianapolis, Indiana



**IN THE**
**COURT OF APPEALS OF INDIANA**

| | | |
|---|---|---|
| LADONNA A. RECK, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF EVELYN L. HOLMES, | ) ) ) ) | |
| Appellant-Plaintiff, | ) ) | |
| vs. | ) ) | No. 49A05-1208-CT-428 |
| HARRY CLIFTON KNIGHT, M.D., MONA SIDDIQUI SAIFULLAH, M.D., COMMUNITY HEALTH NETWORK, INC., and COMMUNITY HOSPITALS OF INDIANA, INC., | ) ) ) ) ) | |
| Appellees-Defendants. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable S.K. Reid, Judge
Cause No. 49D14-0901-CT-3010

**May 17, 2013**

**OPINION - FOR PUBLICATION**

**BRADFORD, Judge**

Evelyn Holmes died on March 17, 2007, after suffering complications from a medical condition known as Stevens-Johnson Syndrome. Appellant-Plaintiff Ladonna A. Reck, in her capacity as personal representative for Holmes's estate, subsequently filed a proposed complaint alleging that Holmes's complications and resulting death were caused by the medical malpractice of Appellees-Defendants Harry Clifton Knight, M.D., and Mona Siddiqui Saifullah, M.D., who were treating Holmes in their capacity as physicians at a hospital owned and operated by Appellees-Defendants Community Health Network, Inc. and Community Hospitals of Indiana, Inc.

Approximately two-and-a-half years after Reck filed her proposed complaint in accordance with the Indiana Medical Malpractice Act, a medical review panel was formed and deadlines for the parties' evidentiary submissions were set. Reck, however, did not comply with these deadlines or file any evidentiary submissions before the medical review panel's statutorily-imposed deadline for issuing its expert opinion had passed. Appellees subsequently filed a motion for preliminary determination of law requesting the dismissal of Reck's proposed complaint with prejudice. Reck brings this appeal from the trial court's order denying Reck's motion to correct error which was filed after the trial court granted the Appellees' motion and dismissed Reck's proposed complaint. We affirm.

## FACTS AND PROCEDURAL HISTORY

Holmes died on March 17, 2007, after suffering complications from a medical condition known as "Stevens-Johnson Syndrome." Appellant's App. p. 77. On January 21, 2009, Reck, as personal representative for Holmes's estate, filed a proposed complaint with

2

the Indiana Department of Insurance in accordance with the Indiana Medical Malpractice Act (the "Act"). The proposed complaint alleged that Holmes died as a result of negligent care provided by Drs. Harry Clifton Knight, Brett Ryan Fink,[1] and Mona Siddiqui Saifullah, all of whom were employed by Community Health Network, Inc. and/or Community Hospitals of Indiana.[2] Over the course of approximately the next two-and-a-half years, the parties engaged in written discovery.

On June 8, 2011, the formation of the medical review panel was completed. On that date, the panel chairman sent an order to the parties which provided a schedule and deadlines for the parties to file evidentiary submissions. The schedule provided that Reck's evidentiary submission was due July 28, 2011, with evidence from the Appellees due on August 29, 2011. The schedule also permitted Reck to file a reply submission on or before September 13, 2011. The medical review panel's expert opinion was required to be handed down on or before December 5, 2011, in order for the panel to be in compliance with the 180-day time limit set by Indiana Code section 34-18-10-13.

Reck did not file any evidentiary submissions by the July 28, 2011 deadline. On August 12, 2011, the chairman of the medical review panel wrote to Reck's counsel indicating that the panel had not received Reck's submissions and requested that Reck's counsel "let [him] know when [counsel] expect[ed] to have it completed." Appellant's App.

---

[1] Dr. Fink is listed on the original Proposed Complaint for Damages but is not listed on any other document filed before the medical review panel or the trial court.

[2] We will collectively refer to the doctors and the hospital systems as "Appellees" throughout this memorandum decision.

3

p. 86. Reck's counsel did not respond to this letter, provide the panel with any explanation of Reck's inability to comply with deadline, or request an extension of time for Reck to file her submissions. Reck did not file any submissions to the panel before the December 5, 2011 deadline for the medical review panel to issue its expert opinion passed.

On January 30, 2012, Appellees filed a "Motion for Preliminary Determination of Law to Dismiss Plaintiff's Proposed Complaint[,]" Appellant's App. p. 70, in which they claimed that Reck's proposed complaint should be dismissed because Reck failed to timely file submissions with the medical review panel and the 180-day limit for the panel to issue its expert opinion had passed. The trial court scheduled a hearing on Appellees' motion for February 22, 2012.

On February 20, 2012, nearly seven months after her evidentiary submissions were originally due, nearly three months after the 180-day statutory deadline for the medical review panel to issue its expert opinion had passed, and just two days before the scheduled hearing on Appellees' motion to dismiss, Reck provided a copy of her evidentiary submissions to Appellees without any explanation regarding the delay. On February 21, 2012, Reck filed a response to the Appellees' motion to dismiss in which she "apologize[d] for the late filing of [her] Panel Submission." Appellant's App. p. 89. Reck indicated that her submissions were late because it took a great deal of time for her counsel to review all of the voluminous medical records covering complex issues and to prepare her submission.

On February 22, 2012, the trial court conducted a hearing on Appellees' motion to dismiss, at which Appellees presented evidence establishing Reck's non-compliance with the

submission schedule and the medical panel's resulting inability to issue its opinion within the 180-day statutory deadline. Reck's counsel acknowledged that he had failed to comply with the submission schedule. Reck's counsel further acknowledged that he did not respond to the panel chairman's letter regarding the approximate date that counsel believed he would submit Reck's evidentiary submissions to the medical review panel; that he did not, at any time, request an extension from the medical review panel; and that he did not have a reason for not asking for an extension.

Reck's counsel also acknowledged that he did not write to Appellees' counsel requesting an extension of time to submit his evidentiary submissions prior to the July 28, 2011 deadline set forth by the medical review panel. Reck's counsel merely claimed that Reck's failure to file a timely evidentiary submission should nonetheless be excused because he and counsel for Appellees had allegedly agreed during a September of 2011 telephonic conference that Reck should have an extension of time to file her submissions in light of the complexity of the matter and the voluminous relevant medical records. However, when pressed by the trial court about the details of this alleged agreement, Reck's counsel could not provide a date by which the parties agreed that Reck should submit her evidentiary submissions or the identity of the person with whom he allegedly made the oral agreement. Reck's counsel merely recalled that he was talking to "a lady at that office." Feb. 2012 Hr. Tr. p. 23.

On March 15, 2012, the trial court entered an order denying Appellees' motion to dismiss, finding that dismissal was not appropriate because Reck had eventually filed her

5

evidentiary submissions, but granting an award of attorney's fees to the Appellees for fees associated with Appellees' motion to dismiss. Appellees subsequently filed a motion to reconsider, or in the alternative, a motion to certify the trial court's decision for interlocutory appeal. On May 9, 2012, the trial court issued an order granting Appellees' motion to reconsider and dismissing Reck's proposed complaint with prejudice. Reck then filed a motion to correct error, which was subsequently denied by the trial court. This appeal follows.

## DISCUSSION AND DECISION

### I. Overview of Indiana's Medical Malpractice Act and the Applicable Standard of Review

It is undisputed that the Act applies to the instant matter. Thus, before turning to the dispositive issue in this case, a brief background of the relevant provisions of the Act is in order. "Before a party brings a medical malpractice action in an Indiana court, the [Act] requires that the proposed complaint be presented to a medical review panel and that the panel render an opinion." *Ramsey v. Moore*, 959 N.E.2d 246, 250 (Ind. 2012) (citing Ind. Code § 34-18-8-4). The Act provides the chairman of the medical review panel with various powers, including the responsibility to establish a reasonable schedule for submission of evidence to the medical review panel.[3] Ind. Code § 34-18-10-3(c). The Act provides that once a medical review panel is formed, "[t]he panel *shall* give its expert opinion within one hundred eight[y] (180) days after the selection of the last member of the panel. Ind. Code §

---

[3] The schedule for the submission of evidence must allow sufficient time for the parties to make a full and adequate presentation of the related facts and authorities. Ind. Code § 34-18-10-3(c).

34-18-10-13(a) (emphasis added). "Implicit in these provisions is the corresponding duty upon the parties to comply with the schedule, if one is set by the chair, and upon the parties and the panel to comply with the 180 day limit; an available remedy for any breach is court-ordered sanctions." *Galindo v. Christensen*, 569 N.E.2d 702, 705 (Ind. Ct. App. 1991); *see also Jones v. Wasserman*, 656 N.E.2d 1195, 1196 (Ind. Ct. App. 1995), *trans. denied*; *Blackden v. Kaufman*, 611 N.E.2d 663, 665 (Ind. Ct. App. 1993).

> Necessarily, the initial burden falls upon the party submitting the proposed complaint. Without evidence from the complainant in support of the proposed complaint the review panel is unable to "express its expert opinion as to whether or not the evidence supports the conclusion that the defendant or defendants acted or failed to act within the appropriate standards of care as charged in the complaint." Only when the complainant's evidence is submitted is the defendant in the proposed complaint compelled to come forward with evidence in response to the complainant's evidence.

*Galindo*, 569 N.E.2d at 705-06 (internal citation omitted). *See also Jones*, 656 N.E.2d at 1196; *Blackden*, 611 N.E.2d at 665-66.

It is well-settled that the Act specifically provides the trial court with the authority to impose appropriate sanctions, including dismissal of a proposed complaint, upon a party who, without good cause shown, fails to act in the manner required by the Act. Ind. Code § 34-18-10-14; *see also Gleason v. Bush*, 689 N.E.2d 480, 483-84 (Ind. Ct. App. 1997); *Jones*, 656 N.E.2d at 1196; *Rivers v. Methodist Hosps., Inc.,* 654 N.E.2d 811, 815 (Ind. Ct. App. 1995); *Blackden*, 611 N.E.2d at 665. "Dismissal is a sanction which a trial court has the inherent authority to order in its discretion." *Galindo*, 569 N.E.2d at 706.

> In exercising its discretion and determining sanctions for a party's failure to comply with the Act, the trial court may appropriately consider, among other things, whether the failure was intentional or contumacious and whether

7

prejudice resulted. The choice of sanctions is a matter within the discretion of the trial court, and we will review a trial court's exercise of discretion in this regard for an abuse of discretion. *Beemer v. Elskens*, 677 N.E.2d 1117[, 1120] (Ind. Ct. App. 1997), *trans. denied; Rivers,* 654 N.E.2d [at 815]; [*Galindo*, 569 N.E.2d at 706].

An abuse of discretion occurs only where the trial court's decision is against the logic and effect of the facts and circumstances before the court. *Benton v. Moore*, 622 N.E.2d 1002[, 1005] (Ind. Ct. App. 1993). When reviewing a trial court's decision under an abuse of discretion standard, we will affirm if there is any evidence supporting the trial court's decision. *Id.*; *Beemer*, [677 N.E.2d at 1120].

*Gleason*, 689 N.E.2d 483-84.

## II. Analysis

On appeal, Reck claims that the trial court abused its discretion in dismissing her proposed complaint because Reck demonstrated good cause and also because Appellees failed to prove that they were prejudiced by Reck's failure to file her evidentiary submissions in a timely fashion. Specifically, Reck claims that she presented testimony demonstrating that the medical records were voluminous and complicated, that her failure to timely file her submissions was not intentional or contumacious, and that the parties agreed that Reck should have an extended period of time to file her submissions. Reck also claims that Appellees failed to prove that they were prejudiced by her failure to file her evidentiary submissions in a timely fashion.

This court considered a factual scenario similar to the instant matter in *Rambo v. Begley*, 796 N.E.2d 314 (Ind. Ct. 2003). In *Rambo*, the plaintiff filed his proposed complaint alleging medical malpractice by Dr. Robert Begley in January of 1998. 796 N.E.2d at 315-16. Over the course of the next three years, the parties engaged in the exchange of discovery

8

materials. *Id*. at 316.  In July of 2001, the medical review panel was set and the parties were given deadlines for their evidentiary submissions.  *Id*.  Rambo requested, and was granted an extension of time to file his submissions.  *Id*.  Approximately one month after the extended deadline for Rambo to file his evidentiary submissions, the chairman of the medical review panel sent a letter to Rambo's counsel notifying Rambo's counsel that the panel had not received Rambo's submissions and requesting that counsel let him know when counsel expected to file Rambo's submissions.  *Id*.  Rambo's counsel did not respond to this letter from the medical review panel.

Approximately two months after the January 2, 2002 statutory deadline for the medical review panel to issue its expert opinion, Dr. Begley filed a motion to dismiss Rambo's proposed complaint.  *Id*. at 317.  Rambo filed his evidentiary submissions on April 12, 2002, nearly seven months after his evidentiary submissions were due, nearly four months after the 180-day statutory deadline for the medical review panel to issue its expert opinion had passed, and nearly one month after Dr. Begley had filed his motion to dismiss.  *Id*.  Rambo claimed that he had good cause for failing to submit his submissions in a timely fashion because he believed the parties had agreed to waive the 180-day statutory limit for the panel to issue its expert opinion.  *Id*.  The trial court subsequently granted Dr. Begley's motion to dismiss, finding that Rambo failed to show good cause.  *Id*. at 319-20.

On appeal, we affirmed the trial court, concluding that the trial court did not abuse its discretion in dismissing Rambo's proposed complaint.  Specifically, we concluded that:

> Here, Rambo failed to diligently pursue discovery over more than a three-year
> period between his proposed complaint and the completion of the medical

9

review panel, the event that triggered the 180-day period for the panel's decision. Once the panel was set, Rambo had notice of the schedule for evidentiary submissions and the date that the panel's decision was due. He missed the extended deadline for filing his evidentiary submission. Then, he failed to respond to an inquiry by the medical review panel that reminded him of the date for the panel's decision, and that the rescheduled time for his submission had passed. He did not request additional time for his submission or inform the panel of any perceived obstinacy by Dr. Begley. Rambo failed to communicate with the panel until after the 180-day period for the panel decision had expired. Therefore, the circumstances in the present case demonstrate that the trial court did not abuse its discretion by dismissing Rambo's claim for failure to prosecute.

*Id*. at 321-22.

Similarly, in the instant matter, the medical review panel was formed approximately two-and-a-half years after Reck filed her proposed complaint. The parties engaged in the exchange of discovery materials during the approximately two-and-a-half years between the time that Reck filed her proposed complaint and the date when the medical review panel was set. The chairman of the medical review panel set a schedule for the parties to submit their evidentiary submissions. According to the schedule, Reck's evidentiary submission was due on or before July 28, 2011. Reck did not file her evidentiary submissions by the July 28, 2011 deadline or request an extension of time to file her submissions prior to the July 28, 2011 deadline.

On August 12, 2011, the chairman of the medical review panel wrote to Reck's counsel indicating that the panel had not received Reck's submissions. Reck's counsel did not respond to the panel chairman's letter which, again, requested an advisement as to when Reck's counsel believed Reck's evidentiary submissions would be submitted to the medical review panel. In addition, during the hearing on Appellees' motion to dismiss, Reck's

10

counsel admitted that he did not, at any time, request an extension from the medical review panel and stated that he did not have a reason for not asking for an extension.

Moreover, Reck's counsel acknowledged that he did not write to Appellees' counsel requesting an extension of time to submit Reck's evidentiary submissions prior to the July 28, 2011 deadline set forth by the medical review panel. Instead, Reck's counsel claimed that he believed he and counsel for Appellees had agreed during a September of 2011 telephonic conference that Reck should have an extension of time to file her evidentiary submissions because of the complexity of the matter and the large number of relevant medical records. However, when pressed about this alleged agreement, Reck's counsel could not provide a date by which the parties agreed that Reck would submit her evidentiary submissions or the identity of the person with whom he made the oral agreement. Reck's counsel merely recalled that he was talking to "a lady at that office." Feb. 2012 Hr. Tr. p. 23.

The trial court's minutes from the September 2011 telephonic conference included a note that "parties advise court they have secured a medical review panel and submissions to be filed within 6 months." Appellant's App. p. 4. Contrary to Reck's claim, however, this note does not specifically indicate that the parties informed the trial court that they had agreed to an extension as the remaining due dates for evidentiary submissions and the deadline for a decision from the medical review panel was within six months of the September 2011 telephonic conference. Moreover, Appellees' counsel stated during the hearing on Appellees' motion to dismiss that Appellees did not agree to waive the 180-day statutory deadline for the medical review panel to issues its opinion, and we agree with the

11

trial court's determination that the parties' advisement about when the evidentiary submissions would be filed did not amount to a waiver of any of the parties' duties or deadlines.

While the medical records that are relevant to the underlying action may be voluminous and complicated, Reck's counsel had approximately two-and-a-half years to review the records and compile Reck's evidentiary submissions before the deadlines for the parties' evidentiary submissions were even set. Reck does not allege that her counsel's failure to review the records and compile her submissions during this time period was due to any delay or wrongful act of Appellees. It is undisputed that Reck did not request an extension of time to file her evidentiary submissions before the medical review panel. Further, while Reck's counsel claimed that he and opposing counsel agreed to an extension of time to file Reck's evidentiary submissions, Reck's counsel could not even tell the trial court with whom he entered into this alleged agreement. These circumstances do not demonstrate that Reck had good cause for failing to file her evidentiary submissions in a timely fashion.

Furthermore, to the extent that Reck relies on *Beemer* for the proposition that dismissal was inappropriate because Appellees failed to show that they were prejudiced by Reck's failure to timely file her evidentiary submissions, we note that, contrary to Reck's reading of *Beemer*, a party requesting dismissal is not required to show prejudice. *See generally Beemer*, 677 N.E.2d at 1120 (providing that the court of appeals has not framed the critical inquiry in whether a trial court abused its discretion in dismissing a proposed

12

complaint to be whether the plaintiff's conduct resulted in prejudice). Prejudice, rather, is merely one factor that the trial court can consider when ruling on a motion to dismiss a proposed complaint. *See id.* (providing that while *Galindo* provides that an appropriate consideration for the trial court in exercising its discretion as to the appropriate sanction is whether prejudice resulted, *Galindo* does not preclude consideration of other factors but merely points to some of the appropriate factors which the trial court may consider). The *Beemer* court held that "it is proper for the trial court to consider the entire record of facts and circumstances surrounding the particular case when determining whether dismissal of a proposed complaint is an appropriate sanction." *Id.* Accordingly, the trial court did not abuse its discretion in dismissing Reck's complaint merely because the Appellees allegedly failed to demonstrate that they were prejudiced by Reck's failure to timely file her evidentiary submissions.

Again, it is well-settled that the Act specifically provides the trial court with the authority to impose appropriate sanctions, including dismissal of a proposed complaint, upon a party who, without good cause shown, fails to act in the manner required by the Act. Ind. Code § 34-18-10-14; *see also Gleason*, 689 N.E.2d at 483-84; *Jones*, 656 N.E.2d at 1196; *Rivers*, 654 N.E.2d at 815; *Blackden*, 611 N.E.2d at 665. It is undisputed that Reck failed to act in a manner required by the Act, *i.e.*, to timely file her evidentiary submissions. Thus, in light of our conclusion that Reck failed to demonstrate good cause for her failure to timely file her evidentiary submissions, we conclude that the trial court acted within its discretion in

13

dismissing Reck's proposed complaint with prejudice.[4]

The judgment of the trial court is affirmed.

RILEY, J., and BROWN, J., concur.

---

[4] Furthermore, to the extent that Reck argues that the trial court erroneously granted Appellees' motion to reconsider which Reck claims was not timely filed, we note that the due date for the Appellees' motion to reconsider fell on a Saturday. Pursuant to Indiana Trial Rule 6, "[t]he last day of the period so computed is to be included unless it is … (1) a Saturday," and, in the event that the last day of the period falls on a Saturday, "the period runs until the end of the next day that is not a Saturday, a Sunday, a legal holiday, or a day on which the office is closed." Here, Appellees' motion to reconsider was filed on the Monday following the Saturday, or the date on which it was due under Trial Rule 6. As such, Appellees' motion to reconsider was timely filed.

14